UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JONATHAN MENA,

                                      Plaintiff,

         -against-

CITY OF NEW YORK, *et al.*,

                                      Defendants.

**DEFENDANTS' LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

12 Civ. 0028 (CM)

------------------------------------------------------------------------ x

        Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, defendants City of New York, Captain Baiarde, Corrections Officer Payne, Correction Officer Andino, Captain Petty, and Corrections Officer Soto, by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, hereby submit the following statement of material facts that are not in dispute:

        1.      Plaintiff was incarcerated in the MOD 2 South housing area at the Robert N. Davoren Center ("R.N.D.C.") on Rikers Island for twenty-six days, from November 7, 2011 until December 2, 2011. Second Amended Complaint ("Compl.") II.D; Declaration of Mark Galen Toews ("Toews Decl.") Exhibit ("Ex.") A at 36:20-24. Plaintiff is currently incarcerated at Attica Correctional Facility in Attica, New York. Dkt. #50.

**Plaintiff's Failure to Exhaust the Available Administrative Remedies**

        2.      On October 21, 2011, Plaintiff was provided with a copy of the Inmate Handbook. Declaration of Antonio Cuin ("Cuin Decl.") at ¶ 5 and Ex. B.  Plaintiff acknowledged receipt of the Inmate Handbook with his signature.  See id.

        3.      The Inmate Handbook explains the five steps of the IGRP. Id. at ¶ 4 and Ex. A.

4. Those steps are also explained in the New York City Department of Correction ("DOC") Directive 3375R-A. Declaration of Kimberly Johnson ("Johnson Decl.") generally and at Ex. A

5. First, an inmate must submit a complaint to the Inmate Grievance Resolution Committee ("IGRC"), on an Inmate Grievance Interview Slip or Inmate Grievance Form, which inmates can obtain through IGRC staff, Housing Area Officers, the Law Library, and the Counseling Office. Cuin Decl. at Ex. A; Johnson Decl. generally and at Ex. A. In the event that an inmate cannot access a Grievance form, the inmate can write his complaint on any paper. Id. Inmates must submit their grievances to the IGRC within ten days of the incident or issue they are complaining about. Id. The IGRC then investigates the inmate's grievance and tries to resolve the grievance informally. Id.

6. Second, if, after submitting a grievance, an inmate either (a) is dissatisfied with the IGRC's proposed informal resolution or (b) does not receive a response to his grievance within five days, the inmate may request a formal hearing. Id.

7. Third, if, after a formal hearing, the inmate is not satisfied with the determination from the hearing, he can appeal the hearing decision to the Warden. Id.

8. Fourth, if, after appealing to the Warden, the inmate is not satisfied with the Warden's decision, the inmate may appeal to the Central Office Review Committee ("CORC"). Id.

9. Fifth and finally, if after appealing to the CORC, the inmate is dissatisfied with the CORC's decision, the inmate can appeal to the Board of Correction ("BOC"). Id.

10. Certain issues, such as complaints of assault or harassment by a DOC staff member, are not considered grievable. Id. If an inmate is not sure whether his complaint is

grievable, the Inmate Handbook directs the inmate to file a grievance so that the IGRC can determine whether the complaint is grievable.  Id.

11. The Inmate Handbook informs inmates that "If you do not a receive a response to your grievance at any step of the Grievance Procedure within the time period required in Directive 3375R-A, you may proceed to the next step of the Grievance Procedure." Cuin Decl. Ex. A.

12. The Inmate Handbook also notifies inmates that "More detailed information on the timeframes and process for all the steps in the procedure is included in Directive 3375R.  Copies of this Directive are available at the Grievance Office and the Law Library." Id.

13. Plaintiff admits his knowledge of the IGRP procedure. Compl. ¶ IV.B. He further testified that "when we asked for the grievance, they [correction officers] said fill it out and give it back. So that's what we did." Toews Decl. Ex. A 35:16-18.

14. During the relevant time period, while plaintiff housed in R.N.D.C., plaintiff testified that he submitted "a couple" grievances, "it was three or four," to Correction Officers at R.N.D.C. Toews Decl. Ex. A at 36:1-2; Compl. ¶ IV.D.

15. Instead of pursuing the above grievances through the five-step IGRP procedure, Plaintiff elected to contact 311, through a third party, to report the alleged conditions of MOD 2 South. Compl. VI.G; Toews Decl. Ex. A at 31:18-32:8.

16. Plaintiff did not pursue any of the submitted grievances beyond the initial step and submitted no appeals of any of the grievances. Toews Decl. Ex. B.

**The Conditions of Plaintiff's Confinement**

*Temperature*

17. DOC Directive 3901R-A governs the policies and procedures related to the sanitation and cleanliness of DOC facilities. It is also available online at http://www.nyc.gov/html/doc/downloads/pdf/3901R-A_n.pdf. Cuin Decl. ¶ 8.

18. This Directive "ensures that all facilities within the New York City Department of Corrections are in compliance with the mandates of the Remedial Orders in Benjamin and related cases and with all applicable health codes and regulations regarding housekeeping." Id. Ex. C at 1.

19. Pursuant to Directive 3901R-A, Public Health Sanitarian reports are generated to assess the relative level of sanitation and cleanliness of housing units. Id. ¶ 10.

20. On November 18, 2011, the housing units known as MOD 2 North and South at RNDC were inspected by a DOC sanitarian from the Environmental Health Unit. Id. ¶ 11.

21. A true and accurate copy of the DOC Sanitarian's Report dated November 18, 2011 ("Sanitarian's Report") is attached to the Cuin Decl. as Ex. D.

22. The Sanitarian's Report, dated November 18, 2011, found that the ambient temperature inside MOD 2 was 68.3° F. Cuin Decl. Ex. D at cny000012.

23. The sanitarian also determined that the ventilation was "NCA," which stands for "No Cause for Action." Id.

24. Plaintiff testified that the temperature in MOD 2 South "was just cold, man." Toews Decl. Ex. A at 26:17. He offers no evidences of any temperatures in the dormitory

aside from simply stating: "it was very cold," "it was real cold," "too cold." Id. at 26:7, 26:12, 24:22

25. MOD 2 South has windows and that remained closed for entire twenty-six day period of Plaintiff's stay in MOD 2 South. Id. at 27:1-3. Plaintiff's assigned bed in MOD 2 South was not near any of the windows. Id. at 27:4-11.

26. In addition, certified copies of meteorological records from the National Climatic Data Center for the weather at LaGuardia Airport in November and December 2011 ("Weather Records") reveal that the eternal temperatures during the relevant time period were particularly mild. Toews Decl. at Ex. C.[1],

27. During the months of November and early December 2011, temperatures fell below 40° on only five occasions. Id. (37° on November 18, 39° on November 19, 39° on November 24, 38° on December 1 and 39° on December 2). The maximum temperature fell below 50° on only two days of the entire twenty-six day period of Plaintiff's confinement in MOD 2. Id. (49° on November 11 and 46° on November 18). The average temperature was below 48° on only six days. Id. (46° on November 11, 42° on November 18, 45° on November 19, 47° on November 24, 44° on December 1, and 46° on December 2).

28. The warmest day of the twenty-six day period was November 14, when the high was 69°, the average 62°, and the low 54°. Id. The coldest day of the twenty-six days period was November 18, when the high was 46°, the average 42° and the low 37°. Id.

29. The temperature during the twenty-six day period never dropped below freezing (32°). See id. The lowest temperature for the twenty-six day period was 37° on November 18. Id.

---

[1] Defendants respectfully submit that the Weather Records are admissible evidence as self authenticating public documents under Federal Rules of Evidence 902(1) and 803(8).

*Sanitation*

30. The Sanitarian's Report also indicates that MOD 2 South was 78.7% within Housekeeping Compliance. Cuin Decl. Ex. D at cny000014.

31. The Report indicates that there was no "presence of vermin or indicator organisms" id.

32. Plaintiff testified at his deposition that the officers gave the "house gang," the detention center's cleaning crew, mouse traps to catch any mice. Toews Decl. Ex. A at 36: 9-12.

33. The Report further indicates that "Cleaning & Sanitizing Procedures [were] Followed," and that there was no "Presence of Odors" any where in the dormitory. Cuin Decl. Ex. D at cny000014.

34. The "Inspection Notes" of the report indicate that there were only "slight[ly]" dirty surfaces and slight mildew in the bathroom and shower. Id.

35. Consistent with this level of sanitation, Plaintiff testified that house gangs cleaned MOD 2 South "at lease twice a day." Toews Decl. Ex. A at 30:20-22. The cleaning included mopping the floor and cleaning the bathroom, including the showers and toilets. Id. at 30:13-18.

36. Plaintiff has no personal knowledge that any of the substances he describes as mold and asbestos were actually the substances that he claims them to be. Toews Decl. Ex. A at 24:19-25; 28:1-14. His allegations are based on unaccredited statements of other inmates who told Plaintiff that there was asbestos and mold in MOD 2 South. Id. at 25:5-8; 28:1-14.

37. Plaintiff has no personal knowledge concerning whether he was exposed to lead while detained in MOD 2 South. Id. at 28:15-29:2.

38. The "Inspection Notes" of the Sanitarian's Report indicates only that there was slight dirt and rust on certain bed frames. Cuin Decl. Ex. D at cny000014.

### *Additional Unsupported Hearsay Statements*

39. Plaintiff testified that he has no personal knowledge of the conversation that occurred between two inmates and Captain Baiarde during which Captain Baiarde allegedly threatened two inmates, as he alleges in the Complaint. Toews Decl. Ex. A at 74:18-22; 75:8-18. Plaintiff never saw Captain Baiarde pull a knife out of his pocket. Id..

Dated: New York, New York
November 18, 2013

                          MICHAEL A. CARDOZO, Esq.
                          Corporation Counsel of the
                             City of New York
                          Attorney for the Defendants
                          100 Church Street, Room 2-106
                          New York, New York 10007
                          (212) 356-0871

By:      s/
            Mark Galen Toews (MT1974)
            Senior Counsel